**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RAYMOND ABRAHAM, HERSHEL ALLEN,                     (
MICHAEL BARBER, TICEY BARBER,                       (
FRANK BERDUCIDO, LOVELL BLACKMAN,                   (
WILLIAM BLUFORD, SHEREE BROOKS,                     (
DIANE BURNETTE, TRISTAN CALDWELL,                   (
JOSE CAZARES, SONIA (PEREZ) CEFALU,                 (
ANTHONY COOK BEY, LYNN CROSBY, WILBERT (
CRISLER, KEVIN CUMMINGS, FRANCIS                    (
CUMMINS, JANEA DATCHER, GEORGE DONALD, (
DARNICE DUDLEY, MARVELLA ELLIS,                     (          Case No.
YOLANDA FERNANDEZ, ANDREW FIELDER,                  (
JOSEPH GABRIEL, DEANDRE GARNETT,                    (
KEVIN GORDON, OSCAR GORDON, FELIX HALL, (
SAM HALL, ANDREW HARE, ANA HERNANDEZ,  (
JONATHAN HILL, JOHN HINTON, MARVIN                  (
HOLMES, MAROLYN HOLMES, JAMES HOWARD, (
JAMIE JACKSON, JAMES JOHNSON, III, TALEASE (        Judge:
JOHNSON, WILLIE JONES, DORICE JORDAN, SKY (
JOYNER, DANIEL KETTMAN, ROGER KING,                 (
LAJETEASE LASTER, JAMES LUJAN, EFRIAN               (
LOPEZ, JOHNNY LYLES, DAISY MAY, CARL                (
MCDONALD, PATRICIA MCDONALD, LARRY                  (
MERKSON, VANESSA MCKINNEY, REGINALD                 (
MONEGAN, CRAIG NELSON, MASHUN NICHOLS, (
DONALD NOBLES, JULIUS NTOW, JAMES                   (
O'NEILL, ANTHONY PANTALIANO, LAWRENCE  (
PATRICK, DARNELL PIERCE, JOSEPH PLAZA,              (
DOVIE SHELBY, JERONE STAMPS, FRANK                  (
STANGEL, STANFORD TRAYWEEKS, MARK                   (
WALKER, DAMON WALLACE, ROBERT                       (
WEATHERS, TOMMYWEAVER, BREANNA WEST, (
GENENA WHITE, and TAMMIE WHITE                      (
                                                    (
              Plaintiffs,                           (
                                                    (
       vs.                                          (
                                                    (
GROUP O, INC.                                       (
              Defendants.                           (

**COMPLAINT**

Plaintiffs, RAYMOND ABRAHAM, HERSHEL ALLEN, MICHAEL BARBER, TICEY

BARBER, FRANK   BERDUCIDO, LOVELL BLACKMAN, WILLIAM BLUFORD, SHEREE

BROOKS, DIANE BURNETTE, TRISTAN CALDWELL, JOSE CAZARES, SONIA (PEREZ) CEFALU, ANTHONY COOK BEY, LYNN CROSBY, WILBERT CRISLER, KEVIN CUMMINGS, FRANCIS CUMMINS, JANEA DATCHER, GEORGE DONALD, DARNISE DUDLEY, MARVELLA ELLIS, YOLANDA FERNANDEZ, ANDREW FIELDER, JOSEPH GABRIEL, DEANDRE GARNETT, KEVIN GORDON, OSCAR GORDON, FELIX HALL, SAM HALL, ANDREW HARE, ANA HERNANDEZ, JONATHAN HILL, JOHN HINTON, MAROLYN HOLMES, MARVIN HOLMES, JAMES HOWARD, JAMIE JACKSON, JAMES JOHNSON, III, TALEASE JOHNSON, WILLIE JONES, DORICE JORDAN, SKY JOYNER, DANIEL KETTMAN, ROGER KING, LAJETEASE LASTER, EFRAIN LOPEZ JAMES LUJAN, JOHNNY LYLES, DAISY MAY, CARL MCDONALD, PATRICIA MCDONALD, VANESSA MCKINNEY, LARRY MERKSON, REGINALD MONEGAN, CRAIG NELSON, MASHUN NICHOLS, DONALD NOBLES, JULIUS NTOW, JAMES O'NEILL, ANTHONY PANTALIANO, LAWRENCE PATRICK, DARNELL PIERCE, JOSEPH PLAZA, DOVIE SHELBY, JERONE STAMPS, FRANK STANGEL, STANFORD TRAYWEEKS, MARK WALKER, DAMON WALLACE, ROBERT WEATHERS, TOMMY WEAVER, BREANNA WEST, GENEVA WHITE, and TAMMIE WHITE by and through their attorneys, Asonye & Associates, for their Complaint, complains against Defendant Group O, Inc. ("Group O" or " Defendant") as follows:

**NATURE OF ACTION**

1. This is an action arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), for Defendant's failure to pay Plaintiffs for all hours worked, including overtime wages.

2. Plaintiffs are hourly non-exempt employees that worked for Defendant and were not paid for all hours worked, including overtime compensation for all hours worked in excess of 40 in a week.

3. Defendant's violations of federal overtime laws were willful.

4. This lawsuit has been filed on behalf of individuals who work or worked for Defendant at the Caterpillar location.

5.   These Plaintiffs are seeking to assert those claims that were not certified to go forward on a collective basis in the matter Creal et al v. Group O. Inc., Case No. 11-CV-336 in the U.S. District Court for the Northern District of Illinois ("Creal Action"). The order decertifying those claims was entered on January 8, 2016.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction of this action under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

7.   The unlawful employment practices described herein were committed within the State of Illinois, at the Caterpillar, Inc. facility in Will County at which Defendant provides manpower services. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8.   Defendant, Group O, is an Illinois corporation doing business within this judicial district. Group O is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

9.   Defendant employs, or had employed, these Plaintiffs during all time relevant to this complaint.

10.  Plaintiff, Raymond Abraham, began his employment with Group O in 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

11.  Plaintiff, Hershel Allen, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

12. Plaintiff, Michael Barber, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

13. Plaintiff, Ticey Barber, began her employment with Group O on or around August 9, 2010 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiving clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

14. Plaintiff, Frank Berducido, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a quality inspector. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

15. Plaintiff, Lovell Blackman, began his employment with Group O in 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked in general production and as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

16. Plaintiff, William Bluford, began his employment with Group O in 2008 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked in general production and as a supervisor and truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

17. Plaintiff, Sheree Brooks, began her employment with Group O in 2005 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a machine operator. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

18. Plaintiff, Diane Burnette, began her employment with Group O in 2012 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as an office clerk and warehouse attendant. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

4

19. Plaintiff, Tristan Caldwell, began his employment with Group O on or around June 6 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver, deliverer, and picker. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

20. Plaintiff, Jose Cazares, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

21. Plaintiff, Sonia (Perez) Cefalu, began her employment with Group O in or around February 2012 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a billing clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

22. Plaintiff, Anthony Cook Bey, began his employment with Group O in 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

23. Plaintiff, Wilbert Crisler, began his employment with Group O in 2004 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver and auditor. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

24. Plaintiff, Lynn Crosby, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a fork lift operator and a repacker. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

25. Plaintiff, Kevin Cummings, began his employment with Group O in 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift

driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

26. Plaintiff, Francis Cummins, began her employment with Group O in 2010 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiving clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

27. Plaintiff, Janea Datcher, began her employment with Group O in 2011 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiving clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

28. Plaintiff, George Donald, began his employment with Group O in 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a safety coordinator. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

29. Plaintiff, Darnise Dudley, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a shipping/receiving clerk and a traffic clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

30. Plaintiff, Marvella Ellis, began her employment with Group O in 2011 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiving clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

31. Plaintiff, Yolanda Fernandez, began her employment with Group O on or around August 10, 2009 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked in shipping. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

32. Plaintiff, Andrew Fielder, began his employment with Group O in approximately May of 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a material handler. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

33. Plaintiff, Joseph Gabriel, began his employment with Group O on or around March 10, 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a truck driver and picker. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

34. Plaintiff, Deandre Garnett, began his employment with Group O in 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a fork lift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

35. Plaintiff, Kevin Gordon, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

36. Plaintiff, Oscar Gordon, began his employment with Group O in approximately 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift operator. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

37. Plaintiff, Felix Hall, began his employment with Group O in 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver and material handler. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

38. Plaintiff, Sam Hall, began his employment with Group O in 2005 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as forklift driver. At

times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

39. Plaintiff, Andrew Hare, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

40. Plaintiff, Ana Hernandez, began her employment with Group O in 2011 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked in the support group. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

41. Plaintiff, Johnathan Hill, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

42. Plaintiff, John Hinton, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

43. Plaintiff, Marolyn Holmes, began her employment with Group O in 2008 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a fork lift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

44. Plaintiff, Marvin Holmes, began his employment with Group O on or around September 9, 2009 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a line trucker. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

45. Plaintiff, James Howard, began his employment with Group O in 2009 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver and outbound loader. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

46. Plaintiff, Jamie Jackson, began his employment with Group O in 2006 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a supervisor, human resources recruiter, and clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

47. Plaintiff, James Johnson, III began his employment with Group O in 2009 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift operator and trainer. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

48. Plaintiff, Talease Johnson, began her employment with Group O on or around January 27, 2006 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiving and shipping clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

49. Plaintiff, Willie Jones, began his employment with Group O in  or around March of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver spotter truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

50. Plaintiff, Dorice Jordan, began her employment with Group O in 2006 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a kitting clerk and truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

51. Plaintiff, Sky Joyner, began his employment with Group O in or around January of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked

as a materials specialist. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

52. Plaintiff, Daniel Kettman, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

53. Plaintiff, Roger King, began his employment with Group O in 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a shift lead. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

54. Plaintiff, Lajetease Laster, began her employment with Group O in 2010 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a shipping clerk and forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

55. Plaintiff, Efrain Lozano Lopez, began his employment with Group O in or around 2004 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as line painter. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

56. Plaintiff, James Lujan, began his employment with Group O in or around July of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver and in repackaging. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

57. Plaintiff, Johnny Lyles, began his employment with Group O in or around September of 2009 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a material handler. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

58. Plaintiff, Daisy May, began her employment with Group O in 2005 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a supervisor. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

59. Plaintiff, Carl McDonald, began his employment with Group O in or around June of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

60. Plaintiff, Patricia McDonald, began her employment with Group O in 2013 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a shipping/receiving clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

61. Plaintiff, Vanessa Wells McKinney, began her employment with Group O in 2006 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a forklift driver and a clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

62. Plaintiff, Larry Merkson, began his employment with Group O in or around January of 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

63. Plaintiff, Reginald Monegan, began his employment with Group O in 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver and material handler. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

64. Plaintiff, Craig Nelson, began his employment with Group O in 2013 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a receiving

clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

65. Plaintiff, Mashun Nichols, began his employment with Group O in or around September of 2016 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift operator. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

66. Plaintiff, Donald Nobles, began his employment with Group O in 2006 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a line truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

67. Plaintiff, Julius Ntow, began his employment with Group O in or around August of 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a team lead. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

68. Plaintiff, James O'Neill, began his employment with Group O in 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

69. Plaintiff, Anthony Pantaliono, began his employment with Group O in or around August of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a parts puller. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

70. Plaintiff, Lawrence Patrick, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a lead picker. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

71. Plaintiff, Darnell Pierce, began his employment with Group O on or around April 19, 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a truck operator. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

72. Plaintiff, Joseph Plaza, began his employment with Group O in or around July 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

73. Plaintiff, Dovie Shelby, began her employment with Group O in or around February of 2012 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a clerk. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

74. Plaintiff, Jerone Stamps, began his employment with Group O in or around 2011 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

75. Plaintiff, Frank Stangel, began his employment with Group O in or around 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

76. Plaintiff, Stanford Trayweeks, began his employment with Group O on or around March 2, 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

77. Plaintiff, Mark Walker, began his employment with Group O in or around July of 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked

as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

78. Plaintiff, Damon Wallace, began his employment with Group O in or around May of 2012 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

79. Plaintiff, Robert Weathers, began his employment with Group O in 2010 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

80. Plaintiff, Tommy Weaver, began his employment with Group O in 2005 and, at times between the date three years before he filed his Consent in the Creal Action to the present, worked as a truck driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

81. Plaintiff, Brenda West, began her employment with Group O in or around December of 2010 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a receiver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

82. Plaintiff, Geneva White, began her employment with Group O in 2010 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a forklift driver. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

83. Plaintiff, Tammie White, began her employment with Group O in 2005 and, at times between the date three years before she filed her Consent in the Creal Action to the present, worked as a team lead. At times relevant to this lawsuit Plaintiff has been an employee of Group O as that term is defined by 29 U.S.C. § 203(e).

## FACTUAL ALLEGATIONS

84.  All Plaintiffs are non-exempt employees that were compensated on an hourly basis.

85. Group O utilizes a payroll system called Kronos that electronically keeps track of each time an hourly, non-exempt employee swipes their time card/badge when starting their shift and ending their shift.

86. All Plaintiffs were required to record their punch-in and punch out times on the same electronic timekeeping system, Kronos.

### LUNCH BREAKS

87. Group O provides staffing and manpower to its clients on a 24 hour basis that consists of three eight hour shifts. For most of the relevant time period for the majority of Caterpillar plant employees, the timekeeping system was programmed to automatically deduct thirty (30) minutes for lunch regardless of whether the employee actually swiped in and out for lunch, whether the employee's swiped time indicated less than 30 minutes was taken for lunch, or whether the employee was required to work through lunch.

88.  During most of the relevant time period, many employees often had their lunch periods cut short or were required to work through lunch periods due to either a direct order from a supervisor or as the result of a substantial workload. These employees had one half hour of pay deducted even though they did not receive a lunch break or returned to work early from lunch.

89.  Defendant was aware that employees were working through some or all of their otherwise unpaid lunch break, but nevertheless allowed such work to continue without compensation.

90.  Employees often work Saturdays and/or Sundays. The employees often do not work a full 12 hour shift on these weekend days. When employees work a shortened work day on weekends, they often do not take a half-hour uninterrupted lunch break. However, the timekeeping system still automatically deducts 30 minutes for lunch for which employees are not paid.

### ROUNDING TIME

91. Defendant further has practiced a policy of indiscriminately rounding off and editing employees' time to purposefully deny employees' wages in order to meet the operational budget.

92. As a result of these rounding practices, although the time swiped in and out still appears on the employee's time record, the system excludes a significant amount of time from the "total" hours worked for that day.

93. Defendant's rounding policies always round in favor of the Defendant and against the employee and result in employees not being fully compensated for the hours worked.

94. Defendant's supervisors acknowledged and admitted to the use of these rounding policies.

95. For example, if an employee swiped-in and started work earlier than their scheduled shift, they would not be compensated for the time spent working prior to their scheduled start time and in calculating hours worked for the day, their start time would be rounded up to the scheduled start time. If an employee started work late, however, their time would not be rounded down. Defendant would either calculate their total hours on either the exact swipe-in time or round the start time up as to further penalize the employee.

96. Additionally, if an employee works late and swipes out after their scheduled end time, their swipe-out time would be cut down to the scheduled end of their shift when calculating their total hours.

97. For illustration, when an employee on the 8:00 a.m. to 4:00 p.m. shift swiped in to work and started working at 7:35 a.m., any time before 8:00 a.m. would not be compensated. However, if the employee on that shift continued working and did not swipe-out until 4: 15 p.m., they would only be paid up to 4:00 p.m.

98. Further, on days when an employee would arrive late for the start of an eight hour shift, but work late after the end of their shift, they would not be compensated for the extra time they worked. For example, if an employee swiped-in and started work at 8:08 a.m. for an 8:00 a.m. start time and worked until 4:33 p.m. for a 4:00 p.m. end time, Defendant would calculate the total hours they worked to be 7.87 hours, even though the employee worked 8.42 hours.

99. Additionally, if an employee was required to stay and work after the scheduled end of their shift, Defendant would round down their swipe-out time down to the scheduled end of their shift. If an employee swiped out early, however, Defendant would not round their time up. Instead, Defendant would calculate the employee's hours based on the exact swipe-out time.

100.     Defendant was aware that employees were working in this manner without compensation, but nevertheless allowed such practices to continue.

101.     Defendant selectively rounds employees' time in such a manner that always benefits the employer and not the employee.

102.     For example, when an employee would swipe in or out at times that do not coincide with the start/end times of the regular three shifts, Defendant has a practice of rounding employee's swipe-in times up to the nearest quarter hour or five minutes, and rounding an employee's swipe-out times down to the nearest half hour, quarter hour, or sometimes five minutes. Defendant does not round in favor of the employee and consistently rounds in such a way to reduce the total hours worked by the employees.

103.     Further, during all relevant times, many Plaintiffs were instructed by Defendant to report to their work areas about 10 minutes prior to the start of their shift.

104.     During this 10 minutes, employees were required to perform work typical of their scheduled work that was both necessary and beneficial to Group O's operations.

105.     Although employees were required to report to their work stations about 10 minutes prior to the start of their shifts, they were regularly not paid for this time due to Defendant's rounding policies.

106.     Defendant was aware that employees were performing work during this 10 minute period, and allowed such work to continue without compensation.

107.     Plaintiffs were also often directed to complete their assignments before punching out for the day and as such, would often have to continue working after their scheduled shift-end time.

108.     Plaintiffs were frequently not paid for this work due to Defendant's rounding policies.

109.     Plaintiffs were also often directed to continue working after their scheduled shift end time when there were "hot orders".

110.     Plaintiffs were frequently not paid for these regular hours worked due to Defendant's rounding policies.

111.     Plaintiffs were frequently not paid for some or all of their overtime work due to Defendant's rounding policies.

112.     During the relevant time period, some employees of Defendant, including the Plaintiffs, have been required to come to work early and stay late at the conclusion of their shift and are not compensated for the work they performed before and after the scheduled time of their shift due to Defendant's payroll policies.

## ALTERING TIME RECORDS

113.     Plaintiffs were often directed to complete their assignments before punching out for the day and as such, would often have to continue working after their scheduled shift-end time.

114.     Plaintiffs were also often directed to continue working after their scheduled shift end time when there were "hot orders".

115.     Plaintiff's time was also regularly manually edited by Defendant's managers, without verification of time actually worked by the employee, to reduce the total number of hours paid.

116.     Defendant regularly altered employees' time records at both the start of and end of a shift.

117.     Defendant regularly altered time records to prevent overtime pay on holidays and weekends.

118.     Defendant also often required Plaintiffs to clock out early but continue working off the clock until the end of their scheduled shift time.

119.     Defendant's falsification of employee time cards was knowing and willful and done with the purpose and intent of depriving employees of all wages due them.

120.     Defendant's practice of altering time records resulted in Plaintiffs not being paid for all regular hours worked.

121.     Defendant's practice of altering time records resulted in Plaintiffs not being paid for all overtime hours worked.

**GENERAL ALLEGATIONS**

122.     Plaintiffs regularly complained to supervisors about all of the aforementioned allegations to no effect.

123.     It is, and has been at all relevant times, the practice and policy of Defendant to purposefully and willfully avoid paying its hourly employees for all hours it suffered and permitted their employees to work as described above. The Defendant regularly required employees to work during their lunch breaks and failed to compensate for the time worked during lunch breaks. The Defendant daily and regularly "rounded off" hours or edits time that Defendant suffers and permits employees to work. Defendant also purposefully and willfully suffers and permits employees to work "off the clock" and performs integral and indispensable activities that directly benefit the Defendant in the operation of its business.

124.     The integral and indispensable activities that are performed for the benefit of Group O, for which employees are not paid regular and overtime wages for all hours worked, are performed daily and regularly. The time involved is not de minimis.

125.     It is, and has been, the practice and policy of Defendant that hours worked by employees are collected by electronic means; are hours worked on a regular basis; and do not present a hardship for Defendant to track and collect.

126.     The books and records of Defendant are material to the Plaintiffs' case as they disclose the hours worked by each employee, the editing of hours not paid, and what each employee was paid for each week.

127.     Many Plaintiffs regularly worked in excess of forty (40) hours per workweek.

128.     As a result of all of the policies and practices above, plaintiffs worked a significant amount of unpaid time.  Defendant never took such unpaid time into account when calculating the point at which the employees reached the threshold of forty hours in a workweek.

129.     As a result, Defendant did not compensate plaintiffs and the class they seek to represent at the rate of one and one half their regular rate of pay (otherwise known as "overtime") for all hours worked in excess of 40 per workweek.

130.     In addition, Defendant has a policy or practice of refusing to provide employees with overtime compensation until they work at least 41 hours per workweek, in violation of the FLSA

131.     Defendant is aware of the legal requirements to compensate non-exempt employees at the rate of one and one-half their regular rate of pay for all hours worked in excess of 40 per workweek, but deliberately disregards this requirement.

### COUNT I-PLAINTIFFS DENIED LUNCH BREAKS
### FAIR LABOR STANDARDS ACT

132.     Plaintiffs Raymond Abraham, Hershel Allen, Michael Barber, Ticey Barber, Frank Berducido, Lovell Blackman, Sheree Brooks, Tristan Caldwell, Jose Cazares, Sonia (Perez) Cefalu, Anthony Cook Bey, Wibert Crisler, Lynn Crosby, Kevin Cummings, Francis Cummins, Janea Datcher, George Donald, Darnise Dudley, Marvella Ellis. Yolanda Fernandez, Andrew Fielder, Joseph Gabriel, DeAndre Garnett, Kevin Gordon, Johnathan Hill, John Hinton, James Johnson, III, Talease Johnson, Willie Jones, Sky Joyner, Roger King, Efrain Lozano Lopez, James Lujan, Johnny Lyles, Daisy May, Carl McDonald, Patricia McDonald, Vanessa Wells McKinney, Larry Merkson, Craig Nelson, Mashun Nichols, Julius Ntow, Lawrence Patrick, Joseph Plaza, Jerone Stamps, Damon Wallace, Brenda West, Geneva White and Tammie White incorporate Paragraphs 1 – 113 as though fully set forth herein.

133.     This Count arises from Defendant's violations of the FLSA, 29 U.S.C. § 201, *et seq.*, for its failure to pay Plaintiffs' regular wages and wages at the overtime rate for all hours worked in excess of forty (40) per workweek.

134.     Pursuant to 29 U.S.C. § 216(b), this action may be maintained by Plaintiffs who have been damaged by Defendant's failure to comply with 29 U.S.C. §§ 206 – 207.

135.     All past and present employees, are or were engaged in job duties and responsibilities integral and indispensable to the operation of Defendant's business.

136.     Plaintiffs frequently had their lunch periods cut short or were required to work through lunch periods due to either a direct order from a supervisor or as the result of a substantial workload.

137.     These Plaintiffs had one half hour of pay deducted even though they did not receive a lunch break or returned to work early from lunch.

138.     Defendant was aware that Plaintiffs were working through some or all of their otherwise unpaid lunch break, but nevertheless allowed such work to continue without compensation.

139.     As a result of the unlawful lunch break practices, Plaintiffs failed to receive due wages for regular hours worked.

140.     As a result of the unlawful lunch break practices, Plaintiffs failed to receive proper overtime compensation for all hours worked over forty (40) in one workweek.

141.     Defendant's failure to pay compensation for all time worked and, as a result, its failure to pay compensation at the overtime rate for all hours worked over forty (40) per workweek, is a willful violation of the FLSA, since Defendant's conduct shows that it either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

a)   Awarding judgment for back pay equal to the amount of all unpaid overtime compensation for the three years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

b)   Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

c)   Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

d)   Awarding reasonable attorneys' fees and costs incurred in filing this action;

e)   Entering an injunction precluding Defendant from violating the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; and

f)   Awarding such additional relief as the Court may deem just and proper.

21

## COUNT II- PLAINTIFFS SUBJECT TO ROUNDING POLICIES
## FAIR LABOR STANDARDS ACT

142.  Plaintiffs Raymond Abraham, Hershel Allen, Michael Barber, Ticey Barber, Frank Berducido, Lovell Blackman, William Bluford, Sheree Brooks, Diane Burnette, Tristan Caldwell, Sonia (Perez) Cefalu, Lynn Crosby, Kevin Cummings, George Donald, Darnise Dudley, Marvella Ellis, Yolanda Fernandez, Andrew Fielder, Joseph Gabriel, Kevin Gordon, Oscar Gordon, Felix Hall, Andrew Hare, Jonathan Hill, John Hinton, Marolyn Holmes, Marvin Holmes, James Howard, James Johnson, III, Willie Jones, Dorice Jordan, Sky Joyner, Roger King, Efrain Lozano Lopez, James Lujan, Johnny Lyles, Carl Mcdonald, Vanessa Wells McKinney, Craig Nelson, Donald Nobles, Julius Ntow, Lawrence Patrick, Dovie Shelby, Jerone Stamps, Frank Stangel, Stanford Trayweeks, Mark Walker, Damon Wallace, Robert Weathers, Tommy Weaver, Brenda West, Geneva White, and Tammie White incorporate Paragraphs 1 – 113 as though fully set forth herein.

143.  This Count arises from Defendant's violations of the FLSA, 29 U.S.C. § 201, *et seq.*, for its failure to pay Plaintiffs' regular wages and wages at the overtime rate for all hours worked in excess of forty (40) per workweek.

144.  Pursuant to 29 U.S.C. § 216(b), this action may be maintained by Plaintiffs who have been damaged by Defendant's failure to comply with 29 U.S.C. §§ 206 – 207.

145.  All past and present employees, are or were engaged in job duties and responsibilities integral and indispensable to the operation of Defendant's business.

146.  Defendant practiced a policy of rounding off and editing employees' time to purposefully deny employees' wages in order to meet the operational budget.

147.  As a result of these rounding practices, although the time swiped in and out still appears on the employee's time record, the system excludes a significant amount of time from the "total" hours worked for that day.

148.  Defendant's rounding policies always round in favor of the Defendant and against the employee and result in employees not being fully compensated for the hours worked.

149.     For example, if an employee swiped-in and started work earlier than their scheduled shift, they would not be compensated for the time spent working prior to their scheduled start time and in calculating hours worked for the day, their start time would be rounded up to the scheduled start time. If an employee started work late, however, their time would not be rounded down. Defendant would either calculate their total hours on either the exact swipe-in time or round the start time up as to further penalize the employee.

150.     Further, on days when an employee would arrive late for the start of an eight hour shift, but work late after the end of their shift, they would not be compensated for the extra time they worked.

151.     Additionally, if an employee was required to stay and work after the scheduled end of their shift, Defendant would round down their swipe-out time down to the scheduled end of their shift. If an employee swiped out early, however, Defendant would not round their time up. Instead, Defendant would calculate the employee's hours based on the exact swipe-out time.

152.     Further, during all relevant times, many Plaintiffs were instructed by Defendant to report to their work areas about 10 minutes prior to the start of their shift; Plaintiffs were not compensated for this time.

153.     Plaintiffs were also often directed to complete their assignments before punching out for the day and as such, would often have to continue working after their scheduled shift-end time.

154.     Plaintiffs were also often directed to continue working after their scheduled shift end time when there were "hot orders".

155.     During the relevant time period, some employees of Defendant, including the Plaintiffs, have been required to come to work early and stay late at the conclusion of their shift and are not compensated for the work they performed before and after the scheduled time of their shift due to Defendant's rounding policies.

156.     Defendant was aware that Plaintiffs were not being compensated for this time but allowed for the practices to continue; Defendant's supervisors acknowledged and admitted to the use of these rounding policies.

157.     As a result of Defendant's rounding practices, Plaintiffs failed to receive due wages for regular hours worked.

158.     AS a result of Defendant's rounding practices, Plaintiffs failed to receive proper overtime compensation for all hours worked over forty (40) in one workweek.

159.     Defendant's failure to pay compensation for all time worked and, as a result, its failure to pay compensation at the overtime rate for all hours worked over forty (40) per workweek, is a willful violation of the FLSA, since Defendant's conduct shows that it either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

g)  Awarding judgment for back pay equal to the amount of all unpaid overtime compensation for the three years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

h)  Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

i)  Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

j)  Awarding reasonable attorneys' fees and costs incurred in filing this action;

k)  Entering an injunction precluding Defendant from violating the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; and

l)  Awarding such additional relief as the Court may deem just and proper.

### COUNT III-PLAINTIFFS WITH ALTERED TIME RECORDS
### FAIR LABOR STANDARDS ACT

160.     Plaintiffs Michael Barber, Ticey Barber, William Bluford, Sheree Brooks, Diane Burnette, Tristan Caldwell, Lynn Crosby, Francis Cummins, George Donald, Marvella Ellis, Yolanda Fernandez, Andrew Fielder, DeAndre Garnett, Kevin Gordon, Oscar Gordon, Felix Hall, Sam Hall,

Andrew Hare, Ana Hernandez, John Hinton, Marvin Holmes, Jamie Jackson, James Johnson, III, Willie Jones, Dorice Jordan, Sky Joyner, Daniel Kettman, Roger King, Lajetease Laster, James Lujan, Carl Mcdonald, Vanessa Wells McKinney, Reginald Monegan, Julius Ntow, James O'Neill, Anthony Pantaliano, Lawrence Patrick, Darnell Pierce, Dovie Shelby, and Tammie White incorporate Paragraphs 1 – 113 as though fully set forth herein.

161.     This Count arises from Defendant's violations of the FLSA, 29 U.S.C. § 201, *et seq.*, for its failure to pay Plaintiffs' regular wages and wages at the overtime rate for all hours worked in excess of forty (40) per workweek.

162.     Pursuant to 29 U.S.C. § 216(b), this action may be maintained by Plaintiffs who have been damaged by Defendant's failure to comply with 29 U.S.C. §§ 206 – 207.

163.     All past and present employees, are or were engaged in job duties and responsibilities integral and indispensable to the operation of Defendant's business.

164.     Plaintiffs were often directed to complete their assignments before punching out for the day and as such, would often have to continue working after their scheduled shift-end time.

165.     Plaintiffs were also often directed to continue working after their scheduled shift end time when there were "hot orders".

166.     Plaintiff's time was regularly manually edited by Defendant's managers, without verification of time actually worked by the employee, to reduce the total number of hours paid.

167.     Defendant regularly altered employees' time records at both the start of and end of a shift.

168.     Defendant's regularly altered time records to prevent overtime pay on holidays and weekends.

169.     Defendants also often required Plaintiffs to clock out early but continue working off the clock until the end of their scheduled shift time.

170.     Defendant's falsification of employee time cards was knowing and willful and done with the purpose and intent of depriving employees of all wages due them.

171.     As a result of Defendants altering time records, Plaintiffs failed to receive due wages for regular hours worked.

172.     As a result of Defendants altering time records, Plaintiffs failed to receive proper overtime compensation for all hours worked over forty (40) in one workweek.

173.     Defendant's failure to pay compensation for all time worked and, as a result, its failure to pay compensation at the overtime rate for all hours worked over forty (40) per workweek, is a willful violation of the FLSA, since Defendant's conduct shows that it either knew that its conduct violated the FLSA or showed reckless disregard for whether its actions complied with the FLSA.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order as follows:

m)  Awarding judgment for back pay equal to the amount of all unpaid overtime compensation for the three years preceding the filing of this Complaint, according to the applicable statute of limitations for willful violations of the FLSA;

n)  Awarding liquidated damages in an amount equal to the amount of unpaid overtime compensation found due pursuant to 29 U.S.C. § 216(b);

o)  Awarding prejudgment interest with respect to the amount of unpaid overtime compensation;

p)  Awarding reasonable attorneys' fees and costs incurred in filing this action;

q)  Entering an injunction precluding Defendant from violating the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; and

r)  Awarding such additional relief as the Court may deem just and proper.

Respectfully submitted,

Plaintiffs,

Renee C. Fell

_____

Attorney for Plaintiffs

Uche O. Asonye – 6209522
Renee C. Fell - 6312785
Hannah R. Walsh-6324813
ASONYE & ASSOCIATES
100 N LaSalle St, Suite 2115
Chicago, IL  60602
Tel. (312) 795-9110
Fax (312) 795-9114
uasonye@aa-law.com
rfell@aa-law.com
hwalsh@aa-law.com

## **JURY DEMAND**

NOW COME Plaintiffs by their undersigned attorneys, and demand a trial by jury in the above entitled cause of action.

Respectfully submitted,

Plaintiffs,

By: /s/  Renee C. Fell

 Attorney for Plaintiffs

Uche O. Asonye - 6209522
Renee C. Fell - 6312785
Hannah R. Walsh - 6324813
ASONYE & ASSOCIATES
100 N. LaSalle Street, Suite 2115
Chicago, IL  60602
Tel. (312) 795-9110
Fax (312) 795-9114
uasonye@aa-law.com
rfell@aa-law.com
hwalsh@aa-law.com