IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND ABRAHAM, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 16 C 11642 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| GROUP O, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs have sued their employer, Group O, Inc. ("Group O"), under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. They allege that Group O violated the FLSA by forcing them to work during unpaid lunch breaks, rounding down the hours on their time sheets, and manually editing their time sheets. Group O has moved to sever Plaintiffs' individual claims and require individual suits pursuant to Federal Rules of Civil Procedure ("Rules") 20 and 21. For the reasons provided herein, Group O's motion is granted.

### I. Background

**A.    Factual Allegations**

Group O is an Illinois corporation that provides "staffing and manpower" services to its clients. Am. Compl. ¶¶ 7, 89. One of Group O's clients is Caterpillar, Inc. ("Caterpillar"), a company that runs a plant in Will County, Illinois. *See id.* Plaintiffs—who number seventy-six in total—worked at the Caterpillar plant as employees of Group O. *See id.* ¶ 4. Plaintiffs filled at least twenty-seven different positions at the plant, including positions such as fork lift operator, human

resources recruiter, office clerk, quality inspector, safety coordinator, supervisor, and truck driver, to name only a few. *Id.* ¶¶ 10–85. Most Plaintiffs worked in only one position during the time relevant to this lawsuit, though some worked in two or three different positions. *See id.*

Plaintiffs were scheduled to work at the Caterpillar plant in eight-hour shifts. *See id.* ¶ 89. To track the hours Plaintiffs worked, Group O used an electronic payroll system called "Kronos." *Id.* ¶ 87. The Kronos system recorded the time when each employee swiped his or her time card upon starting or ending a shift. *Id.* The Kronos system also automatically deducted a thirty-minute unpaid lunch break from each shift. *Id.* ¶ 89.

Plaintiffs allege that Group O violated the FLSA by undercompensating them in three ways. First, they claim that they were not compensated for work that they were required to perform during their lunch breaks. *Id.* ¶¶ 89–92. According to Plaintiffs, they were often required to work during their lunch breaks "due to either a direct order from a supervisor or as a result of a substantial workload." *Id.* ¶ 90. The Kronos system, however, deducted a thirty-minute lunch break from each employee's shift "regardless of whether the employee actually swiped in and out for lunch, whether the employee's swiped time indicated less than 30 minutes was taken for lunch, or whether the employee was required to work during lunch." *Id.* ¶ 89.

Second, Plaintiffs assert that Group O had a policy of "rounding off" the hours on their time sheets in a way that systematically undercompensated them for pre- and post-shift work that Group O required them to perform. *Id.* ¶¶ 93–94, 114.

In particular, if an employee swiped in and started work earlier than her scheduled start time, then the start time reported on her time sheet would be rounded to the scheduled start time. *Id.* ¶ 97. Likewise, if an employee worked late and swiped out after her scheduled end time, then the end time reported on her time sheet would be rounded to the scheduled end time. *Id.* ¶ 98.

Last, Plaintiffs allege that Group O's managers manually edited Plaintiffs' time sheets "without verification of time actually worked" in order to "reduce the total number of hours paid." *Id.* ¶ 117. Plaintiffs relatedly allege that Group O manually altered their time sheets to avoid paying overtime wages on holidays and weekends. *Id.* ¶ 119.

**B.     Plaintiffs' FLSA Claims in *Creal v. Group O, Inc.***

All seventy-six Plaintiffs in this case were also opt-in plaintiffs in a collective action brought before Judge Kocoras in *Creal v. Group O, Inc.*, No. 13-CV-4275 (N.D. Ill. filed June 10, 2013). *See* Am. Compl. ¶¶ 10–85. In *Creal*, three named plaintiffs brought FLSA claims, as well as wage-and-hour claims under Illinois law, against Group O on behalf of themselves and all other similarly situated persons. *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 833 (N.D. Ill. 2016). As in the present case, the *Creal* plaintiffs' FLSA claims were based on allegations regarding Group O's rounding policy and work performed during lunch breaks. *Id.* at 834.

In May 2014, Judge Kocoras conditionally certified the named plaintiffs' FLSA claims in *Creal* pursuant to 29 U.S.C. § 216(b). *Id.* at 833. Ninety-one additional plaintiffs opted in to the collective action soon thereafter. *Id.* The

3

parties proceeded with discovery, and Group O then moved to decertify the collective action. *Id.* at 836.

In January 2016, Judge Kocoras granted Group O's motion to decertify, holding that the plaintiffs were not "similarly situated" to one another and thus could not proceed as a collective action under § 216(b). *Id.* at 836. First, to the extent the plaintiffs' claims were based on allegations regarding Group O's rounding policy, Judge Kocoras found that there was no "factual nexus" binding the claims together. *Id.* at 838. Although the record suggested that Group O indeed rounded employees' "punch-in" and "punch-out" times to the scheduled times of their shifts, Judge Kocoras found that this rounding policy did not result in any unpaid work, because there was no evidence of a uniform policy requiring employees to perform pre- or post-shift tasks. *Id.* Instead, the evidence showed that employees were expected to begin working at their scheduled start times—not earlier—and that employees were compensated for any post-shift work they were required to complete. *Id.* at 838–39. Moreover, to the extent some plaintiffs nevertheless claimed to have performed pre- or post-shift work without pay, Judge Kocoras found that their claims involved highly individualized inquiries because the plaintiffs had different positions, responsibilities, and supervisors. *Id.* at 839–40.

Next, to the extent the plaintiffs' claims were based on allegations of unpaid work during meal breaks, Judge Kocoras again found that there was no "identifiable factual nexus" underlying the claims and that the claims were too individualized to proceed on a collective basis. *Id.* at 841–42 (internal quotation marks omitted).

4

Group O's employee manual instructed employees to "take their full-allotted time for [their] meal period[s] and not perform any work during their meal period[s]," which undercut the plaintiffs' allegation that Group O had a policy of requiring unpaid work during lunch breaks. *Id.* (internal quotation marks omitted). In addition, several plaintiffs who nevertheless worked during their lunch breaks admitted in their depositions "that they did so of their own accord (indicating that they were not required to do so by Group O or its management) . . . and that they knew of no other employees who did so (indicating that the practice was not common)." *Id.* Finally, Judge Kocoras again explained that the plaintiffs' claims were highly individualized because the plaintiffs worked in different positions and had different job duties and supervisors. *Id.* These differences led to "variation in the frequency, nature[,] and duration of the lunch break interruptions." *Id.* at 841–42 (internal quotation marks omitted). He also noted that "some opt-in plaintiffs admitted that they took all or part of their mealbreak after the interruption (or could have done so), raising individualized questions regarding the necessity, frequency, and extent of work performed during unpaid meal breaks on an employee-by-employee (and lunch-by-lunch) basis." *Id.* at 842 (citation omitted).

For these reasons, Judge Kocoras found that the plaintiffs' claims were too dissimilar to be suitable for adjudication on a collective basis. *Id.* at 836. The opt-in plaintiffs' claims were therefore dismissed without prejudice. *Id.* at 842. About one year later, Plaintiffs filed the present lawsuit, "seeking to assert those claims that were not certified to go forward on a collective basis in [*Creal*]." Am. Compl. ¶ 5.

5

## II. Legal Standard

Under Rule 20, individuals may join together as plaintiffs in a civil action where (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). In addition, a court deciding whether to permit joinder of plaintiffs under Rule 20 may consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (quoting *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)) (internal quotation marks omitted). If joinder of plaintiffs "would create 'prejudice, expense or delay,'" the court may refuse to permit joinder. *Id.*; *accord Malibu Media, LLC v. John Does 1–6*, 291 F.R.D. 191, 199 (N.D. Ill. 2013). "District courts are accorded substantial discretion in matters of joinder." *Strominger v. Brock*, 592 F. App'x 508, 512 (7th Cir. 2014).

"Misjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, where misjoinder occurs, Rule 21 permits the court to, "at any time, on just terms, add or drop a party" or "sever any claim against a party." *Id.* "When a federal civil action is severed . . . the severed claims proceed as if suits had been filed separately." *Lee v. Cook Cty.*, 635 F.3d 969, 971 (7th Cir. 2011). "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000).

### III. Analysis

Group O contends that Plaintiffs' FLSA claims are misjoined and that all but one of Plaintiff's claims should therefore be severed from this lawsuit. In support, Group O argues that Plaintiffs fail to meet the requirements for joinder under Rule 20 and that, even if Plaintiffs could meet those requirements, the severance of their claims would promote fairness and judicial economy. Mot. Sever at 9–14, ECF No. 23.[1] The Court agrees.

First, Plaintiffs' claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as Rule 20 requires. Fed. R. Civ. P. 20(a)(1)(A). Courts have not established bright-line rules for determining when claims arise out of the same "series of transactions or occurrences" such that joinder should be permitted under Rule 20. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000); Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1653 (West 3d ed.). Instead, courts take a "case-by-case approach" and construe Rule 20 "in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes." *Bailey*, 196 F.R.D. at 515 (internal quotation marks omitted). In the employment context, when deciding whether claims arise from the same "series of transactions or occurrences" under Rule 20, courts consider factors such as whether the plaintiffs had the same supervisors, worked in the same

---

[1] In the alternative, Group O argues that Plaintiffs should be collaterally estopped from joining their claims because they already litigated the issue of whether they are "similarly situated" for purposes of § 216(b) in the *Creal* action. Mot. Sever at 4–9. For the reasons explained herein, the Court concludes that joinder of Plaintiffs' claims is inappropriate under Rule 20. The Court therefore need not reach Group O's collateral estoppel argument.

locations or departments, worked during the same general time period, and were affected by company-wide policies. *See Adkins v. Ill. Bell Tel. Co.*, No. 14 C 1456, 2015 WL 1508496, at *7 (N.D. Ill. Mar. 24, 2015) (considering these types of factors in deciding whether to permit joinder of individual FLSA claims filed by eighty-two plaintiffs); *Berry v. Ill. Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001) (considering these types of factors in deciding whether to permit joinder of individual employment discrimination claims).

Here, Plaintiffs allege that their FLSA claims arise from the same set of company-wide policies—namely, Group O's policies regarding unpaid lunch breaks, rounding of hours, and manual alteration of time records. Taken in isolation, these allegations weigh in favor of permitting joinder. But other allegations counsel strongly against joinder, because they indicate that Plaintiffs' claims are too individualized to have arisen from the same series of transactions or occurrences.

As an initial matter, although all seventy-six Plaintiffs worked for Group O at the Caterpillar plant, they worked in at least twenty-seven different positions.[2] Their descriptions of these positions—which range from clerical positions like

---

[2] These positions are identified in the Amended Complaint as auditor, billing clerk, deliverer, forklift driver, general production staff, human resources, line painter, machine operator, material handler, materials specialist, office clerk, outbound loader, parts puller, picker, quality inspector, receiver, recruiter, repacker, safety coordinator, shift lead, shipping clerk, supervisor, support group staff, traffic clerk, trainer, truck driver, and warehouse attendant. Am. Compl. ¶¶ 10–85.

Some portions of the Amended Complaint appear to use different terminology to describe the same position. For example, the Amended Complaint describes one Plaintiff as a "repacker" but describes another Plaintiff as an employee who "worked . . . in repackaging." *Id.* ¶¶ 24, 57. Where the descriptions of Plaintiffs' positions differ slightly but appear to be substantially similar, as in this example, the Court assumes for purposes of ruling on this motion that the descriptions refer to the same position.

billing clerk and human resources recruiter to more labor-intensive positions like forklift operator and outbound loader, *see, e.g.*, Am. Compl. ¶¶ 21, 28, 46–47—suggest that Plaintiffs had different job duties and likely had different supervisors.[3] In fact, some of the Plaintiffs themselves worked as supervisors. *Id.* ¶¶ 16, 47, 59. The nature of each Plaintiff's work and the actions of each Plaintiff's supervisor likely affected the frequency, necessity, and nature of any pre- or post-shift work, work during lunch breaks, or overtime work that each Plaintiff performed. *See Creal*, 155 F. Supp. 3d at 840–42 (noting that differences in employees' work positions and job responsibilities implicated different sets of facts relevant to each employee's FLSA claims); *Adkins*, 2015 WL 1508496, at *7 (severing FLSA claims for misjoinder where three different employment positions were represented among the eighty-two plaintiffs seeking to join their claims). As such, the wide variety in the circumstances surrounding each Plaintiff's employment at Group O indicates that Plaintiffs' claims arise from different sets of relevant facts, rather than from a single common series of transactions or occurrences.

Furthermore, the allegations in the Amended Complaint suggest that Plaintiffs worked for Group O during many different time frames. Although most Plaintiffs began working for Group O sometime between 2010 and 2012, several Plaintiffs began their employment as early as 2004 or 2005. Am. Compl. ¶¶ 17, 23,

---

[3] Plaintiffs assert in their response brief that "many of [them] had the same supervisor." Pls.' Resp. at 7, ECF No. 32. But neither the response brief nor the Amended Complaint specifies just how many of the seventy-six Plaintiffs reported to the same supervisor, or how many supervisors are at issue in total. As a point of reference, Group O notes (and Plaintiffs do not dispute) that the ninety-one opt-in plaintiffs in *Creal* reported to a total of twenty-nine supervisors. Mot. Sever at 10.

9

39, 56, 59, 82, 85. Another Plaintiff began working for Group O as late as 2016. *Id.* ¶ 66. Given these differences in Plaintiffs' periods of employment, the facts and time frames relevant to their claims are likely to vary significantly. *See Adkins*, 2015 WL 1508496, at *7 (severing FLSA claims and noting that the plaintiffs worked for the defendant in "various time periods," some starting as early as January 1979 and some ending as early as June 2009).

Because Plaintiffs were employed in a wide variety of positions at the Caterpillar plant, had different job responsibilities, and worked over different time periods, the Court concludes that their claims have not arisen from the same transaction, occurrence, or series of transactions or occurrences under Rule 20. Plaintiffs' claims are therefore misjoined and must be severed. *See id.* at *6–9 (holding that eighty-two plaintiffs seeking to bring individual FLSA claims in a single action were misjoined).

This conclusion should hardly be surprising, given that, in *Creal*, Judge Kocoras deemed Plaintiffs' claims too individualized for the Plaintiffs to be "similarly situated" under § 216(b). *See Creal*, 155 F. Supp. 3d at 837–42. Although the Seventh Circuit has never addressed the relationship between Rule 20 and § 216(b), other courts to consider the issue have held that Rule 20's "same transaction or occurrence" standard is more stringent than § 216(b)'s "similarly situated" standard. *See Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 786–87 (N.D. Ill. 2007) (holding that the "similarly situated" standard under § 216(b) is "less stringent" than the requirements for joinder of parties under Rule 20);

10

*Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (same); *Flavel v. Svedala Indus. Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) (same); *see also Adkins*, 2015 WL 1508496, at *5 ("[B]ecause Plaintiffs could not satisfy the similarly situated standard under FLSA Section 216(b) with respect to this particular claim, they necessarily cannot meet Rule 20(a)'s joinder requirement."); *Mahaffey v. Amoco Corp.*, No. 93 C 4587, 1997 WL 24712, at *1 (N.D. Ill. Jan. 17, 1997) ("To proceed as a representative action under [§ 216(b)], plaintiffs need only show that they are 'similarly situated,' and not that their claims arose out of the same transaction or occurrence as required under Fed. R. Civ. P. 20(a).").

This leads to a final point: Even if the Court were to hold that Plaintiffs' claims arose from the same series of transactions or occurrences, the Court would still grant Group O's motion to sever, because joinder would be unduly prejudicial and inefficient in light of the prior proceedings in *Creal*. Courts have broad discretion to sever claims under Rule 21 in the interest of avoiding prejudice, promoting judicial economy, or safeguarding "principles of fundamental fairness," even where the requirements of Rule 20 are met. *Chavez*, 251 F.3d at 632; *Malibu Media*, 291 F.R.D. at 199. As previously noted, all seventy-six Plaintiffs in this case were also opt-in plaintiffs in the collective action that was decertified in *Creal*. Am. Compl. ¶¶ 10–85 (noting that each Plaintiff also opted in to the *Creal* action). And Plaintiffs make no secret of the fact that this case seeks to bring precisely those claims that were not certified to proceed collectively in *Creal*. *Id.* ¶ 5. Permitting Plaintiffs to join their claims in this suit after losing at the decertification stage in

11

*Creal* would unfairly prejudice Group O by giving Plaintiffs a second bite of the proverbial apple—that is, a second chance to litigate their claims together in a single action by doing an end-run around Judge Kocoras's decertification ruling. Permitting joinder would also disserve the systemic interest in promoting judicial economy. It makes little sense for a judge to spend years presiding over a collective action (as Judge Kocoras did in *Creal*) if a myriad of opt-in plaintiffs, disappointed by the judge's ultimate ruling at the decertification stage, could then simply refile the same claims against the same defendant together in a new action under Rule 20. In fact, allowing plaintiffs to join FLSA claims in such a manner would, in effect, render the collective action procedures in § 216(b) a mere nullity. For these reasons, joinder of Plaintiffs' claims would be unduly prejudicial to Group O and would disserve the systemic interest in promoting judicial economy.

Plaintiffs press the Court to come to the opposite conclusion. They argue that joinder of their claims will promote, rather than impede, judicial economy because their claims are so small that it would be cost-prohibitive for them to proceed individually. Pls.' Resp. at 8–9. But this argument is unpersuasive. Although some efficiencies might be gained by joinder, others would be lost, given the individualized aspects of Plaintiffs' claims as well as the high number of Plaintiffs that would be involved in the suit. *See, e.g.*, *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) (noting that joinder of forty or more plaintiffs is generally impracticable). Furthermore, once their claims are severed, Plaintiffs can reduce their litigation costs to a more manageable level by coordinating discovery

12

among their individual cases. *See Adkins*, 2015 WL 1508496, at *10 (rejecting a similar argument in support of joinder of FLSA claims and noting that "severing Plaintiffs' claims does not mean that they cannot coordinate discovery").

For these reasons, the Court declines to permit joinder and finds that severance of Plaintiffs' claims is appropriate. *See* Fed. R. Civ. P. 21. "When a federal civil action is severed [under Rule 21], it is not dismissed." *Lee*, 635 F.3d at 971. "Instead, the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately." *Id.* Accordingly, the claims brought by the first-named Plaintiff in the Amended Complaint, Raymond Abraham, shall remain before this Court. The claims of the remaining seventy-five Plaintiffs shall be severed from this case, treated as separate suits, and assigned separate docket numbers. *See id.*; *Adkins*, 2015 WL 1508496, at *10 (collecting cases in which claims were severed under Rule 21 and the Clerk of Court was accordingly directed to treat each Plaintiff's claim as its own separate action with its own separate docket number).

## IV. Conclusion

For the reasons stated herein, Group O's motion to sever Plaintiffs' individual claims and require individual suits [22] is granted. The Clerk of Court is directed to sever the claims of all Plaintiffs except Raymond Abraham from this case, to assign separate docket numbers to each of those actions, and to assign each newly created action to a district court judge by lot. *See* Order of 3/24/15, ECF No. 146, *Adkins v. Ill. Bell Tel. Co.*, No. 14 C 1456 (N.D. Ill. filed Feb. 28, 2014) (Castillo, C.J.) (directing the Clerk of Court to similarly sever claims and assign separate docket numbers to each severed plaintiff's action). Each Plaintiff is directed to file a separate amended complaint in his or her individual action, file a civil cover sheet, and pay the applicable filing fee within 30 days of the entry of this Order. Plaintiffs are warned that failure to file an amended complaint and civil cover sheet and to pay the applicable filing fee in an individual action may result in dismissal of that action.

**IT IS SO ORDERED.**          **ENTERED   1/30/18**

_____
**John Z. Lee**
**United States District Judge**

14